# UNITED STATES DISTRICT COURT

for the

District of Hawaii

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
*Apr 20, 2018*
SUE BEITIA, CLERK

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
Four electronic devices seized on October 6, 2017, from )
a White 2003 Toyota Sequoia, Four-Door Sport Utility, )
Hawaii License Plate MKS 471 )

Case No.  Mag. No. 18-378 KJM

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, which is incorporated herein by reference.

located in the _____ District of _____ Hawaii _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, which is incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC § 922(g)(1) | Felon in possession of a firearm and ammunition |
| 18 USC § 924(c)(1)(A) | Possession of a firearm in furtherance of a drug-trafficking cime |
| 21 USC § 841(a)(1) | Possession with intent to distribute a controlled substance |

The application is based on these facts:

See Affidavit of Speical Agent John Bost,which is incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
/s/ John Bost
*Applicant's  signature*

_____
John Bost, Special Agent, ATF
*Printed name and title*

Sworn to under oath before me telephonically, and attestation acknowledged pursuant to Fed. R. Crim. P. 4.1(b)(2), this 20th day of April 2018.

Date:   04/20/2018

City and state:   Honolulu, Hawaii





Barry M. Kurren
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:  ) | MAG. NO. 18-378 KJM |
| ) | |
| FOUR ELECTRONIC DEVICES SEIZED  ) | AFFIDAVIT IN SUPPORT OF AN |
| ON OCTOBER 6, 2017, FROM A WHITE  ) | APPLICATION UNDER RULE 41 |
| 2003 TOYOTA SEQUOIA, FOUR-DOOR  ) | FOR A WARRANT TO SEARCH AND |
| SPORT UTILITY, HAWAII LICENSE  ) | SEIZE |
| PLATE MKS 471  ) | |
| ) | |
| ) | |
| _____) | |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION
UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE**

I, JOHN BOST, after being duly sworn, depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a search warrant authorizing the search of property—four

electronic devices described in Attachment A—which are currently in law enforcement

possession, and the extraction from that property of electronically stored information described

in Attachment B.

2.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and

Explosives (ATF) and have been since November 2005.  I am currently assigned to the ATF

Honolulu Field Office – Maui County.  I was previously employed as a Police Officer with the

Charlotte-Mecklenburg Police Department (CMPD) in Charlotte, North Carolina for

approximately 4¾ years.  I am a graduate of the Federal Law Enforcement Training Center

(FLETC) Criminal Investigator Training Program (CITP), the ATF National Academy Special

Agent Basic Training (SABT), and the CMPD Police Academy.  I have participated in

investigations, which involve federal firearms and controlled substance violations.  As a federal

agent, I am authorized to investigate violations of laws of the United States and am a law enforcement officer with the authority to execute search warrants under the authority of the United States.

3.      Based on my knowledge, training, experience, discussions with other law enforcement personnel, and participation in firearms and controlled substance investigations, I know:

a.   That drug traffickers often purchase and/or title their assets in fictitious names, aliases or the names of relatives, associates or business entities to avoid detection of these assets by government agencies;

b.   That even though these assets are in names other than the drug traffickers', the drug traffickers actually own and continue to use these assets, and exercise dominion and control over them;

c.   That drug traffickers must maintain, on hand, large amounts of U.S. currency in order to maintain and finance their on-going drug business;

d.   That it is common for drug traffickers to maintain books, records, receipts, notes, ledgers, airline tickets, receipts relating to the purchase of financial instruments and/or the transfer of funds, and other papers relating to the transportation, ordering, sale and distribution of controlled substances;

e.   That it is common for drug traffickers to secrete contraband, proceeds of drug sales and records of drug transactions in secure locations within their residences or other locations which they maintain dominion and control over, for ready access and to conceal these items from law enforcement authorities;

2

f.  That it is common for persons involved in drug trafficking to maintain evidence pertaining to their obtaining, secreting, transfer, concealment and/or expenditure of drug proceeds, such as: currency, financial instruments, precious metals and gemstones, jewelry, books, records, invoices, receipts, records of real estate transactions, bank statements and related records, passbooks, money drafts, letters of credit, money orders, bank drafts, cashier's checks, bank checks, safe deposit box keys and money wrappers.  These items are maintained by the drug traffickers within their residences or other locations which they maintain dominion and control over;

g.  That when drug traffickers amass large proceeds from the sale of controlled substances, the drug traffickers attempt to legitimize these profits through money laundering activities.  To accomplish these goals, drug traffickers utilize, including but not limited to: domestic and international banks and their attendant services, securities brokers, professionals such as attorneys and accountants, casinos, real estate, shell corporations and business fronts, and otherwise legitimate businesses which generate large quantities of currency;

h.  That the sale of methamphetamine, and/or any other controlled substance, generates large quantities of United States currency in small denominations;

i.  That it is common for drug traffickers to physically handle and count the currency after receiving it in exchange for the controlled substance, thereby leaving residue traces of the controlled substance on the currency;

j.  That law enforcement agencies own dogs which are trained to react to the scent of controlled substances and residue traces of controlled substances, and

3

that those trained dogs have reacted to controlled substance tainted currency negotiated at banks and concealed in the residences of drug traffickers;

k.  That the courts have recognized that the small and medium denominations of questionable currency, along with the manner in which the currency is handled, carried and concealed may establish probable cause that there is a substantial connection between the questionable currency and drug transactions;

l.  That the Currency Transaction Report (CTR) (IRS form 4789), which is required to be completed and filed with the IRS by all financial institutions on every currency transaction which exceeds $10,000.00, causes tremendous problems for drug traffickers when they attempt to negotiate their illegal profits at a financial institution;

m.  That in order to evade the filing of a CTR, drug traffickers often "structure" their currency transactions so that no one transaction exceeds $10,000.00, or they provide false or misleading information in an attempt to legitimize or conceal the source and/or ownership of the currency;

n.  That drug traffickers, at times, become fearful that their extravagant spending habits will bring them under scrutiny by the Internal Revenue Service or other federal, state or local agencies.  In order to legitimize their spending, these drug traffickers file tax returns reporting income commensurate with the amount of money they have spent during the year, which they feel can be traced and documented by the government.  The "source" of their income reported on these returns are usually falsely stated, misleading or generic in

4

terms. Retained copies of these returns are commonly kept by drug traffickers in their residences;

o. That methamphetamine and/or other drug traffickers commonly maintain addresses or telephone numbers in books or papers which reflect names, addresses and/or telephone numbers of their associates in the organization;

p. That individuals involved in drug trafficking must often rely on others to obtain their controlled substances and to help them market the controlled substances. Frequently, drug traffickers maintain evidence of the identities of these co-conspirators at their residence;

q. That drug traffickers take or cause to be taken photographs of themselves, their associates, their property, and their product. That these drug traffickers usually maintain these photographs in their possession;

r. That drug traffickers commonly use cellular phones and other personal handheld electronic devices, tablets, laptop and desktop computers to communicate with, among others, their customers, their suppliers, and other criminal associates and to store phone numbers, text messages, emails, photographs, physical and email addresses, and other information that constitutes evidence of their drug trafficking activities. Drug traffickers also commonly store records of their illegal distribution and sales of controlled substances on computers and computer discs, diskettes, cassettes, tapes, and other forms of digital media. Drug traffickers commonly maintain these items on their person, in their residences, and/or in their vehicles;

s.   That drug traffickers commonly have, in their possession, on their person, at their residences, vehicles, and/or at their businesses, firearms, including but not limited to:  handguns, pistols, revolvers, rifles, shotguns, machine guns and other weapons.  Said firearms are often acquired by drug traffickers in trade for their product and are used to protect themselves, their drug supplies, their property, and/or to assist in the collection of drug debts;

t.   That firearms are tangible objects of habitual retention, meaning that once a person acquires a weapon of this type, they usually keep said weapons for long periods of time;

u.   That owners of firearms are also likely to be in possession of ammunition. Owners of firearms tend to maintain at their residences documents reflecting their acquisition and ownership of these items, including receipts, bills of sale, and insurance documents;

v.   That occupants of residences and/or vehicles tend to keep and maintain various records and documents, including, for example, mail, cancelled mail, deeds, leases, rental agreements, banking records, bills, statements, telephone records, diaries, identification documents, keys, photographs, clothing, and other similar indicia of ownership indicating occupation, possession, or control over the residence and/or vehicle.  Such indicia of ownership demonstrates proof of control over other items of evidentiary value found in a search; and

w.   That drug trafficking organizations utilize vehicles to transport, store and conceal large amounts of controlled substances and United States currency.

6

4.      The information contained in this affidavit is true and correct to the best of my knowledge and belief.  I am familiar with the facts set forth in this affidavit based upon my personal knowledge and/or information provided to me by other law enforcement personnel and/or witnesses.  This affidavit contains information necessary to support probable cause for the requested search warrant.  It is not intended to include each and every fact and matter observed or known to the government.

## IDENTIFICATION OF THE DEVICES TO BE SEARCHED

5.      The property to be searched is as follows:

(1) an LG cellular phone (black in color with silver trim) with "verizon 4G LTE" on the back, marked with a piece of tape containing the number "27" and the initials "JB", further identified as ATF Item #000027 under ATF Investigation Number 787025-18-0016, referred to herein as "Device-1";

(2) a Samsung cellular phone (dark blue in color front/black in color back) with "verizon" on the front, model SM-B311V, MEID HEX: A000004771EE66, missing a battery cover and battery, further identified as ATF Item #000028 under ATF Investigation Number 787025-18-0016, referred to herein as "Device-2";

(3) a Samsung cellular phone (grey in color front/black in color back), with "verizon" on the front and tape on both sides, missing a battery cover, marked with a piece of tape containing the number "29" and the initials "JB", further identified as ATF Item #000029 under ATF Investigation Number 787025-18-0016, referred to herein as "Device-3";

(4) an Amazon tablet (black in color), model SR87CV, marked with a piece of tape containing the number "30" and the initials "JB", further identified as ATF Item #000030 under ATF Investigation Number 787025-18-0016, referred to herein  as "Device-4."

6.     Device-1 through Device-4 are currently at the ATF Honolulu Field Office Evidence Vault, located at 300 Ala Moana Blvd., Room 3-200, Honolulu, HI 96850.

7.     The telephone numbers and International Mobile Subscriber Identity (IMSI) numbers of Device-1 through Device-3 are currently unknown.

8.     The applied-for warrant would authorize the forensic examination of Device-1 through Device-4 for the purpose of identifying electronically stored data particularly described in Attachment B, that may contain evidence of the crimes of felon in possession of a firearm and ammunition, in violation of Title 18, United States Code, Section 922(g)(1), possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A), and possession with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).  The applied-for warrant would also authorize a special agent to utilize Device-1 through Device-3 to place a call to a special agent's government issued cellular phone to identify the assigned cellular phone number of Device-1 through Device-3.

## PROBABLE CAUSE AND BACKGROUND OF INVESTIGATION

***Reported stolen Ford Mustang***

9.     On September 27, 2017, Maui County Police Department (referred to herein as "MPD") officers responded to a burglary type case at 47 Ponana Street, Kihei, HI 96753.  The victim (referred to herein as "J.P."), who was out of town, had multiple items stolen from inside

8

his/her residence.  J.P. also had his/her vehicle, a red 2005 Ford Mustang convertible, bearing

Hawaii license plates LBY 527 (referred to herein as the "Ford Mustang"), stolen from inside the

garage of his/her residence.

***MPD recovery of the stolen Ford Mustang***

10.     On October 2, 2017, various MPD officers participated in a special assignment to

check for wanted person(s) and stolen vehicles in the Kihei, HI area.  One of the wanted

individuals was JAMES SHAMBLIN (referred to herein as "SHAMBLIN"), who had

outstanding warrants and was a suspect in numerous cases involving narcotics, burglary, theft,

and stolen vehicles.   While conducting surveillance at the intersection of Namauu Place and

South Kihei Road, MPD Officer Carlos Frate observed a red Ford Mustang convertible (later

identified as the Ford Mustang) being driven on the roadway.  Officer Frate observed an

individual (later identified as M.A.; referred to herein as "M.A.") park the Ford Mustang on the

shoulder of the road, across the street from 13 Namauu Place, Kihei, HI 96753.  Officer Frate

checked with MPD Dispatch, who confirmed that the Ford Mustang was reported stolen.  A short

time later, Officer Frate observed M.A. exit the driveway from 13 Namauu Place, Kihei, HI

96753 and walk towards the Ford Mustang.  Once M.A. opened the door and sat in the driver's

seat of the Ford Mustang, Officer Frate and other officers approached M.A., where he/she was

detained and placed in handcuffs.

11.     While M.A. was being searched, he/she asked why he/she was being detained.

When Officer Frate explained that the Ford Mustang was reported stolen, M.A. related that

he/she did not know it was stolen and that "James" allowed him/her to borrow the vehicle.

12.     After being advised of his/her Miranda Warnings and waiving them, M.A. related

that approximately two days prior, he/she ran into a friend, SHAMBLIN, on the road in Makena.

9

SHAMBLIN had the Ford Mustang and asked M.A. if he/she liked the vehicle.  SHAMBLIN

then offered to allow M.A. to borrow the Ford Mustang.  M.A. related that he/she did not know

where SHAMBLIN obtained the Ford Mustang.  MPD arrested M.A. for Burglary in the First

Degree and Unauthorized Control of a Propelled Motor Vehicle.  Since J.P. was out of town,

Kitagawa's Towing towed the Ford Mustang.

13.     On October 3, 2017, Officer Frate made contact with M.A.'s significant other

(referred to herein as "R.R."), who related that SHAMBLIN was currently in possession of

M.A.'s vehicle bearing Hawaii license plates MKS 471 (a 2003 Toyota Sequoia; referred to

herein as the "Toyota Sequoia").  R.R. advised that SHAMBLIN refused to give the Toyota

Sequoia to R.R., until SHAMBLIN received the money that M.A. owed him.

14.     After returning to Maui and going through the recovered Ford Mustang on

October 3, 2017, J.P. went to the MPD Kihei Station and turned in several items from the Ford

Mustang that did not belong to him/her.  One of the items was a Maui Beach Hotel (MBH)

parking pass dated September 28-29, 2017.

15.     On October 4, 2017, MPD recovered MBH video surveillance from September

28, 2017, which showed a red Ford Mustang convertible matching the description of J.P.'s stolen

Ford Mustang park at MBH.  After the red Ford Mustang convertible parked, MBH video

surveillance showed SHAMBLIN walking from the area of the vehicle to the MBH lobby, where

he made a room reservation with the front desk agent using a gold colored card.  MBH

documents for September 28-29, 2017 showed that SHAMBLIN made payment using a

Visa/Mastercard ending in 7482.  MBH Front Desk Agent L.K. also recalled confirming

SHAMBLIN's identity by checking his identification.

10

*MPD recovery of the Toyota Sequoia*

16.     On October 5, 2017, MPD Officer Daron Sugiyama observed the Toyota Sequoia parked in the driveway of the residence at 108 Eleu Place, Kihei, HI 96753.  Officer Sugiyama contacted the owner/representative of the property at 108 Eleu Place, who gave MPD permission to check the property for SHAMBLIN.  While looking into the Toyota Sequoia from outside, MPD Officer Miroslav Bashev observed an unknown amount of suspected marijuana in plain view, on top of the center console.  Officer Bashev also smelled a strong odor of marijuana coming from the cracks of the closed doors to the Toyota Sequoia.

17.     On October 5, 2017, the Toyota Sequoia was towed to the MPD Kihei Station, pending a state search warrant.

18.     Officer Bashev checked and found that the Toyota Sequoia was registered to O.G. in Lahaina, HI.  Officer Bashev contacted O.G. by phone, who advised that he/she sold the Toyota Sequoia to M.A. approximately 3-4 weeks prior.  O.G. related that he/she met M.A. through church and that M.A. paid O.G. $500.00 in cash to purchase the Toyota Sequoia.  M.A. was supposed to pay O.G. the remaining balance of $4,500.00. Once he/she was paid the balance, O.G. was going to transfer the title to M.A.

*Execution of the state search warrant on the Toyota Sequoia*

19.     On October 6, 2017, Officer Bashev applied for a state search warrant for the Toyota Sequoia, under Search Warrant No. 2017-0374 in Attachment C, which was reviewed and signed by the Honorable Michelle L. Drewyer, District Judge of the Second Circuit, State of Hawaii.  That same day, the search warrant was executed on the Toyota Sequoia.

20.     During the search of the Toyota Sequoia, officers found the following: (1) one Ziploc type packet with blue devil logos in Attachment D containing suspected crystal

11

methamphetamine (net weight 1.53 grams; contained in the front pocket of item 9 below); (2)

two empty Ziploc type packets (contained in the front pocket of item 9 below); (3) two Ziploc

type bags containing suspected marijuana (net weight 7.39 and 1.52 grams); (4) one Ziploc type

packet containing two brown pills and brown powdery substance; (5) one Ziploc type packet

containing a suspected marijuana cigarette (net weight 0.19 grams); (6) one rubber NO GOO

container containing suspected hash oil (gross weight of 12.85 grams); (7) one black metal Sharp

Stone grinder; (8) one blue and green zippered pouch (contained items 3-7 above);  (9) one grey

Maui Built camouflage backpack (contained items 1-8 above); (10) suspected marijuana in the

center console (net weight 0.81 grams); (11) one broken glass pipe, one black zippered Olivia

and Joy wallet, and one black Hanes low cut sock in the glove box; (12) one silver color torch

lighter from the front passenger seat; (13) medical documents belonging to M.A. in the center

console storage compartment; (14) suspected marijuana from the rear passenger seat (net weight

0.22 grams); (15) $150.00 in U.S. currency; (16) one gold colored MasterCard debit card for

James Shamblin (ending in 7482) in Attachment E; (17) one black/white Nike shoe (left), size

6.5, from the rear driver's side floor board (contained items 15-16 above); (18) suspected

marijuana plants from the third row driver's side (net weight 700.27 grams); (19) one black Leitz

Wetzlar binoculars and case in glove box; (20) one black Fuel motorcycle helmet in front

passenger floorboard; (21) one State of California handicap placard #727875 D hanging from

rearview mirror; (22) one black LG Verizon cellular phone (Device-1) and charger from center

console, which is the subject of this application for search warrant; (23) one black and silver

motorcycle cover from rear driver's side floor board; (24) Kawasaki Ninja motorcycle parts from

the third row (driver's side); (25) one black Rosso Bianco single strap backpack containing

room/vehicle keys and two garage openers; (26) assorted silverware; (27) two propane torches;

(28) one pair of black Quicksilver men's slippers, size 12/13; (29) one black, men's Dickies pants, size 40/32; (30) one black Koster Grant sunglasses; (31) two Samsung, Verizon cellular phones (Device-2 and Device-3), which are the subject of this application for search warrant; (32) one black Amazon tablet (Device-4) with grey/orange cover, which is the subject of this application for search warrant; (33) one blue Calvin Klein backpack from rear trunk area (contained items 26-32 above); (34) one Winchester, model 37, .410 shotgun (modified barrel and stock – weapon made from a shotgun), loaded with one Remington Peters .410 shot shell; (35) one black Quikpod by Digipower bag (contained item 34 above); (36) assorted women's clothing and one men's Quicksilver board shorts; (37) one Victoria's Secret make up bag containing assorted makeup; (38) one Mahina bag from the rear trunk (contained items 34-37 above); (39) one State of Hawaii license plate RNG064 in rear pocket of driver's seat; (40) assorted Kawasaki Ninja motorcycle parts; (41) one suspected metal lock punch in rear trunk area; and (42) one Honolulu Cookie bag (contained items 40-41 above).

*Field test on the suspected crystal methamphetamine and marijuana*

21.     On October 6, 2017, the suspected crystal methamphetamine was field tested by MPD utilizing NIK test "A" and "U", which showed a positive chemical color reaction, indicating the presence of amphetamine and methamphetamine.

22.     On October 6, 2017, all of the suspected marijuana compounds were field tested by MPD utilizing NIK test "E", which showed a positive chemical color reaction, indicating the presence of tetrahydrocannabinol (THC).

*Information received from the registered owner of the Toyota Sequoia*

23.     On October 7, 2017, at approximately 7:00 pm, MPD Sergeant Mario Bonilla assigned MPD Officer Rahul Mehra an additional information case in Lahaina, HI.  Upon

arrival, Officer Mehra spoke with O.G., who related that he/she went to the MPD Kihei Station on October 7, 2017 at approximately 4:00 pm, where the Toyota Sequoia was returned to him/her. Since he/she did not have a key for the Toyota Sequoia, O.G. had AAA send a tow truck to have the Toyota Sequoia towed back to his/her residence. While the tow truck driver hooked up the Toyota Sequoia, O.G. left and drove to his/her residence (i.e. O.G. did not observe the Toyota Sequoia the entire time it was being towed). O.G. advised that the tow truck arrived at his/her residence with the Toyota Sequoia at approximately 6:00 pm. Since the Toyota Sequoia smelled like marijuana, O.G. asked his son/daughter, J.G. (referred to herein as "J.G."), to help him/her clean the Toyota Sequoia. When J.G. opened the car jack compartment in the trunk area, he/she found a green plastic box, which did not belong to either of them. When they opened the green plastic box, they saw multiple bags that appeared to contain drugs. O.G. told J.G. to call the police. O.G. also advised that he/she touched the container to move it out of the way.

24.     On the same date, Officer Mehra spoke with J.G., who related that O.G. asked him/her to help clean the Toyota Sequoia. As J.G. was cleaning the trunk area, he/she opened the car jack compartment and saw a green plastic container inside. When he/she opened it, J.G. observed multiple bags that appeared to contain drugs. J.G. went inside and spoke with his significant other, who was the son/daughter of MPD Sergeant E. Quintero. J.G. contacted Sergeant Quintero and informed her of the situation, and Sergeant Quintero notified Sergeant Bonilla. J.G. advised that he/she did not use gloves when he/she opened the container.

***Field test on the suspected crystal methamphetamine***

25.     On October 7, 2017, Officer Mehra recovered one green plastic container (Sterilite brand container with square designs on the top; referred to herein as the "green

container") in Attachment F with one plastic Ziploc type bag that contained three plastic sandwich bags. The three sandwich bags each contained suspected crystal methamphetamine. While at the MPD Lahaina Station, Officer Mehra field tested the suspected crystal methamphetamine in each of the three sandwich bags utilizing NIK test "A" and "U". All three samples showed a positive color reaction indicating the presence of methamphetamine. Officer Mehra also weighed the crystal methamphetamine, which had a total gross weight of 428.18 grams (115.10 grams, 144.22 grams, and 168.86 grams).

### SHAMBLIN's status as a convicted felon

26.     Checks with the Hawaii Criminal Justice Data Center (CJIS-Hawaii), the National Crime Information Center (NCIC), and copies of SHAMBLIN's criminal cases revealed that SHAMBLIN was a convicted felon as of April 21, 1995 and had fifty-three felony convictions. SHAMBLIN was previously convicted for a felony drug offense (Promoting a Dangerous Drug in the Third Degree), as well as firearm related offenses (Felon in Possession of a Firearm and Felon in Possession of Ammunition).

### SHAMBLIN's pending federal criminal charges

27.     On March 15, 2018, SHAMBLIN was indicted in the United States District Court for the District of Hawaii, under CR. NO. CR18-00039 LEK, for two counts of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(viii) [possession with intent to distribute five grams or more of methamphetamine], two counts of Title 18, United States Code, Section 924(c)(1)(A)(i) [possession of a firearm in furtherance of a drug trafficking crime], and two counts of Title 18, United States Code, Section 922(g)(1) [being a felon in possession of a firearm and ammunition] in Attachment G. The facts and circumstances surrounding the indictment involved (a) SHAMBLIN possessing methamphetamine, a firearm, and ammunition

15

in his Billabong backpack that was in his possession on or about October 26, 2017, and (b)

SHAMBLIN possessing methamphetamine, a firearm, and ammunition in the Kaanapali Beach

Hotel (referred to herein as "KBH") room 329 safe on or about October 26, 2017.  SHAMBLIN

was the registered guest for KBH room 329 from October 25-26, 2017, and SHAMBLIN was at

the KBH front desk when he possessed his Billabong backpack on October 26, 2017.  KBH is

located at 2525 Kaanapali Parkway, Lahaina, HI 96761.

***Execution of the state search warrant on the KBH room 329 safe***

28.     MPD Officer Justin Carlson applied for a state search warrant for the KBH room

329 safe and Billabong backpack on October 26, 2017.  The Honorable Lloyd A. Poelman,

District Judge of the Second Circuit, State of Hawaii, reviewed and signed State Search Warrant

No. SW2017-AH-0032 (Billabong backpack) and SW2017-AH-0033 (KBH room 329 safe) on

October 26, 2017.  That same day, the search warrants were executed on the KBH room 329 safe

and the Billabong backpack.  During the search of the KBH room 329 safe, MPD recovered the

following: (1) Hi-Point Firearms, model CF380, .380 ACP caliber pistol bearing serial number

P816559, loaded with a black magazine containing seven .380 ACP caliber cartridges; (2) black

firearm holster; (3) blue plastic container (Sterilite brand container with square designs on the

top; referred to herein as the "blue container") in Attachment F containing methamphetamine

(31.2 grams ± 1.2 grams of pure substance); (4) black case containing a glass pipe with residue;

(5) six antique coins (one coin reported stolen); and (6) one antique pocket watch.

***Execution of the state search warrant on the Billabong backpack***

29.     During the search of the Billabong backpack, MPD recovered the following: (1)

.45 ACP caliber pistol comprised of an A.R. Sales Co. model 1911 frame bearing serial number

LH 1478, and a Colt Government Model slide, loaded with a silver magazine containing six .45

ACP caliber cartridges; (2) Fobus C-21 holster; (3) five acetaminophen/hydrocodone pills; (4) two glass pipes with residue; (5) one US Balance digital scale; (6) black "NUDESTIX" case containing eight packets of methamphetamine (16.97 grams ± 0.62 grams of pure substance; three of the eight packets contained blue devil logos in Attachment D); (7) two diamond rings (reported stolen); (8) green/grey "Travelon" pouch; (9) plastic Ziploc type baggie containing additional smaller baggies/packets (numerous Ziploc type packets contained blue devil logos in Attachment D); (10) blue/clear "Lug" pouch; and (11) $4,385.00 in U.S. currency.

*Chemical analysis results of the methamphetamine and pills*

30.     The methamphetamine and acetaminophen/hydrocodone pills seized on October 26, 2017 were sent to the Drug Enforcement Administration (DEA) Southwest Laboratory.  The DEA chemical analysis report confirmed the substances as methamphetamine and acetaminophen/hydrocodone.

*Possession and location of Device-1 through Device-4*

31.     Device-1 through Device-4 are currently in the lawful possession of ATF.  They came into ATF's possession in the following way:  The Toyota Sequoia was seized by MPD on October 5, 2017 when Officer Bashev observed an unknown amount of suspected marijuana in plain view, on top of the center console, and also smelled a strong odor of marijuana coming from the cracks of the closed doors to the Toyota Sequoia.  The Toyota Sequoia was towed and secured at the MPD Kihei Station, located at 2201 Piilani Highway, Kihei, HI 96753.  On October 6, 2017, Search Warrant No. 2017-0374 was obtained and subsequently executed on the Toyota Sequoia.  MPD seized various evidentiary items to include Device-1 through Device-4, pursuant to Search Warrant No. 2017-0374 in Attachment C.  ATF took custody of Device-1 through Device-4 from MPD on March 29, 2018.  Therefore, while MPD might already have all

necessary authority to search and examine Device-1 through Device-4, I seek this additional

warrant out of an abundance of caution to be certain that a search and examination of Device-1

through Device-4 will comply with the Fourth Amendment and other applicable laws.

32.     Device-1 through Device-4 are currently at the ATF Honolulu Field Office

Evidence Vault, located at 300 Ala Moana Blvd., Room 3-200, Honolulu, HI 96850.  In my

training and experience, I know that Device-1 through Device-4 have been stored in a manner in

which their contents are, to the extent material to this investigation, in substantially the same

state as they were when Device-1 through Device-4 first came into the possession of MPD.

## **TECHNICAL TERMS**

33.     Based on my knowledge, training, experience, and discussions with other law

enforcement personnel, I use the following technical terms to convey the following meanings:

    a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular

        telephone) is a handheld wireless device used for voice and data

        communication through radio signals.  These telephones send signals through

        networks of transmitter/receivers, enabling communication with other wireless

        telephones or traditional "land line" telephones.  A wireless telephone usually

        contains a "call log," which records the telephone number, date, and time of

        calls made to and from the phone.  In addition to enabling voice

        communications, wireless telephones offer a broad range of capabilities.

        These capabilities include: storing names and phone numbers in electronic

        "address books;" sending, receiving, and storing text messages and e-mail;

        taking, sending, receiving, and storing still photographs and moving video;

        storing and playing back audio files; storing dates, appointments, and other

information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

19

d.   GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.   PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same

20

capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.   Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which like programs on a personal computer, perform different functions and save data associated with those functions.  Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g.   IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

h.   Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the

21

Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

34.     Based on my knowledge, training, experience, and discussions with other law enforcement personnel, I know that these electronic devices have capabilities that may allow them to serve as wireless telephones, digital cameras, portable media players, GPS navigation devices, PDAs, and tablets.  Examining data stored on electronic devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the devices.  Cellular phones also typically have electronic memory capability within which frequently called phone numbers can be stored and "speed-dialed."  Additionally, cellular phones are capable of storing the phone numbers of incoming calls and keeping voice mail messages, text messages, and other pages.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

35.     Based on my knowledge, training, experience, and discussions with other law enforcement personnel, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensic tools.

36.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how Device-1 through Device-4 were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on Device-1 through Device-4 because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

37. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of Device-1 through Device-4 consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of Device-1 through Device-4 to human inspection in order to determine whether it is evidence described by the warrant.

38. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve

23

the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## APPLICABLE LAW

39.     Title 18, United States Code, Section 922(g)(1) makes it a federal crime for any person having been convicted of a crime punishable by imprisonment for a term exceeding one year to knowingly possess in or affecting commerce, any firearm or ammunition, or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

40.     Title 18, United States Code, Section 924(c)(1)(A) makes it a federal crime for any person to knowingly possess a firearm in furtherance of a drug trafficking crime.

41.     Title 21, United States Code, Section 841(a)(1) makes it a federal crime for any person to knowingly or intentionally distribute or possess with intent to distribute a controlled substance.

## CONCLUSIONS OF THE AFFIANT

42.     Therefore, based on my training and experience and the aforementioned facts, I believe that probable cause exists for a search warrant authorizing the search and examination of Device-1 through Device-4 described in Attachment A to seek the items described in Attachment B.  More particularly, I believe there is probable cause to search and examine Device-1 through Device-4 for the items described in Attachment B because:

     a.   (i) drug traffickers commonly use cellular phones and other personal handheld electronic devices, tablets, laptop and desktop computers to communicate with, among others, their customers, their suppliers, and other criminal associates, and to store phone numbers, text messages, emails, photographs, physical and email

24

addresses, and other information that constitutes evidence of their drug trafficking activities; (ii) drug traffickers commonly store records of their illegal distribution and sales of controlled substances on computers and computer discs, diskettes, cassettes, tapes, and other forms of digital media; (iii) drug traffickers commonly maintain these items on their person, in their residences, and/or in their vehicles; (iv) drug traffickers commonly have in their possession, on their person, at their residences, vehicles, and/or at their businesses, firearms, including but not limited to: handguns, pistols, revolvers, rifles, shotguns, machine guns and other weapons; (v) firearms are often acquired by drug traffickers in trade for their product and are used to protect themselves, their drug supplies, their property and/or to assist in the collection of drug debts; (vi) owners of firearms are likely to be in possession of ammunition; (vii) occupants of residences and/or vehicles tend to keep and maintain various records and documents, including, for example, mail, cancelled mail, deeds, leases, rental agreements, banking records, bills, statements, telephone records, diaries, identification documents, keys, photographs, clothing, and other similar indicia of ownership indicating occupation, possession, or control over the residence and/or vehicle; (viii) such indicia of ownership demonstrates proof of control over other items of evidentiary value found in a search; and (ix) drug trafficking organizations utilize vehicles to transport, store and conceal large amounts of controlled substances and United States currency;

b. SHAMBLIN's criminal history demonstrates his past involvement with controlled substances and firearms.  SHAMBLIN was previously convicted of a felony drug

25

offense (Promoting a Dangerous Drug in the Third Degree) as well as firearm
related offenses (Felon in Possession of a Firearm and Felon in Possession of
Ammunition);

c.   MPD recovered the Ziploc type packet with blue devil logos in Attachment D
containing suspected crystal methamphetamine (net weight 1.53 grams; contained
in the front pocket of the grey Maui Built camouflage backpack) from the Toyota
Sequoia on October 6, 2017.  This Ziploc type packet was similar in design,
shape, and size to (i) three of the eight Ziploc type packets with blue devil logos
in Attachment D that contained methamphetamine which MPD recovered from
SHAMBLIN's Billabong backpack on October 26, 2017, and to (ii) the numerous
Ziploc type packets with blue devil logos contained in the larger plastic Ziploc
type baggie in Attachment D that MPD recovered from SHAMBLIN's Billabong
backpack on October 26, 2017 (NOTE: The Ziploc type packets with blue devil
logos may be identical in size.  Since all of the Ziploc type packets with blue devil
logos are not currently in the custody of ATF, photographs provided to ATF by
MPD and DEA as well as ATF photographs have been used to show the size at
this time.)  SHAMBLIN had the Billabong backpack in his possession at KBH on
October 26, 2017;

d.   MPD recovered a gold colored MasterCard debit card (ending in 7482) in
Attachment E from the Toyota Sequoia on October 6, 2017.  MBH video
surveillance from September 28, 2017 showed SHAMBLIN in the MBH lobby,
where he made a room reservation with the front desk agent using a gold colored

card.  MBH documents for September 28-29, 2017 showed that SHAMBLIN

made payment using a Visa/Mastercard ending in 7482;

e.  MPD recovered the green container in Attachment F containing suspected crystal

methamphetamine (total gross weight of 428.18 grams) from O.G. and J.G. on

October 7, 2017 from the Toyota Sequoia.  The green container was similar in

design, shape, and size to the blue container in Attachment F containing

methamphetamine (31.2 grams ± 1.2 grams of pure substance) that MPD

recovered from the KBH room 329 safe on October 26, 2017. (NOTE: The green

container and blue container may be identical in size.  Since both containers are

not currently in the custody of ATF, photographs provided to ATF by MPD and

DEA have been used to show the size at this time.)  SHAMBLIN was the

registered guest for KBH room 329 from October 25-26, 2017;

f.  MPD recovered a Winchester, model 37, .410 shotgun (modified barrel and stock

– weapon made from a shotgun), loaded with one Remington Peters .410 shot

shell, from the Toyota Sequoia on October 6, 2017.  MPD recovered a Hi-Point

Firearms, model CF380, .380 ACP caliber pistol bearing serial number P816559,

loaded with a black magazine containing seven .380 ACP caliber cartridges from

the KBH room 329 safe on October 26, 2017.  SHAMBLIN was the registered

guest for KBH room 329 from October 25-26, 2017.  MPD recovered a .45 ACP

caliber pistol comprised of an A.R. Sales Co. model 1911 frame bearing serial

number LH 1478, and a Colt Government Model slide, loaded with a silver

magazine containing six .45 ACP caliber cartridges from SHAMBLIN's backpack

on October 26, 2017 (SHAMBLIN had the backpack in his possession at KBH);

27

g.  (i) SHAMBLIN possessed the controlled substances in the Toyota Sequoia with

intent to distribute; (ii) SHAMBLIN possessed the Winchester, model 37, .410

shotgun (modified barrel and stock – weapon made from a shotgun), loaded with

one Remington Peters .410 shot shell in the Toyota Sequoia in furtherance of a

drug trafficking crime and as a previously convicted felon; and (iii) SHAMBLIN

used one or more of the electronic devices (Device-1 through Device-4) in the

Toyota Sequoia in furtherance of illegal drug trafficking, all in violation of Title

21, United States Code, Section 841(a)(1), Title 18, United States Code, Section

924(c)(1)(A), and Title 18 United States Code, Section 922(g)(1).

Respectfully submitted,


 /s/ John Bost
JOHN BOST
Special Agent
Bureau of ATF


Sworn to under oath before me telephonically, and attestation acknowledged pursuant to Fed. R. Crim. P. 4.1(b)(2), this 20th day of April 2018.



Barry M. Kurren
United States Magistrate Judge

28

## ATTACHMENT A

The property to be searched is as follows:

1)      an LG cellular phone (black in color with silver trim) with "verizon 4G LTE" on the back, marked with a piece of tape containing the number "27" and the initials "JB", further identified as ATF Item #000027 under ATF Investigation Number 787025-18-0016, referred to herein as "Device-1";

2)      a Samsung cellular phone (dark blue in color front/black in color back) with "verizon" on the front, model SM-B311V, MEID HEX: A000004771EE66, missing a battery cover and battery, further identified as ATF Item #000028 under ATF Investigation Number 787025-18-0016, referred to herein as "Device-2";

3)      a Samsung cellular phone (grey in color front/black in color back) with "verizon" on the front and tape on both sides, missing a battery cover, marked with a piece of tape containing the number "29" and the initials "JB", further identified as ATF Item #000029 under ATF Investigation Number 787025-18-0016, referred to herein as "Device-3";

4)      an Amazon tablet (black in color), model SR87CV, marked with a piece of tape containing the number "30" and the initials "JB", further identified as ATF Item #000030 under ATF Investigation Number 787025-18-0016, referred to herein  as "Device-4.;

Device-1 through Device-4 are currently at the ATF Honolulu Field Office Evidence Vault, located at 300 Ala Moana Blvd., Room 3-200, Honolulu, HI 96850.

This warrant authorizes the forensic examination of Device-1 through Device-4 for the purpose of identifying the electronically stored information described in Attachment B.

DEVICE-1





DEVICE-2





DEVICE-3





DEVICE-4





## ATTACHMENT B

1.    All records on Device-1 through Device-4 described in Attachment A that relate to violations of Title 18, United States Code, Section 922(g)(1), Title 18, United States Code, Section 924(c)(1)(A), and Title 21, United States Code, Section 841(a)(1) and involve JAMES SHAMBLIN, including:

    a.   Electronic records of telephone numbers, names, and other identifying information pertaining to incoming and outgoing calls/text messages on the Devices, relating to the possession of firearms or ammunition or the distribution or possession of controlled substances;

    b.   Electronic phonebook directories of the cellular phone numbers, names, and other identifying information maintained on the Devices, relating to the possession of firearms or ammunition or the distribution or possession of controlled substances;

    c.   Text and voice messages, electronic mail, and other communication records electronically maintained on the Devices, relating to the possession of firearms or ammunition or the distribution or possession of controlled substances;

    d.   Photographs or videos maintained on the Devices, relating to the possession of firearms or ammunition or the distribution or possession of controlled substances;

    e.   Lists of customers and related identifying information;

    f.   Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    g.   Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    h.   Any information recording JAMES SHAMBLIN's schedule or travel; and

i.   All bank records, checks, credit card bills, account information, and other

financial records.

2.      Evidence of user attribution showing who used or owned Device-1 through

Device-4 at the time the things described in this warrant were created, edited, or deleted, such as

logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items

of evidence in whatever form and by whatever means they may have been created or stored,

including any form of computer or electronic storage (such as flash memory or other media that

can store data) and any photographic form.

## ATTACHMENT C

FILED

2017 OCT -6 PM 4:18

N. MARTINS, CLERK
SECOND CIRCUIT COURT
STATE OF HAWAII

IN THE DISTRICT COURT OF THE SECOND CIRCUIT
WAILUKU DIVISION
STATE OF HAWAII

| | | |
|---|---|---|
| IN RE APPLICATION FOR | ) | SEARCH WARRANT NO. 2017-0374 |
| | ) | |
| A SEARCH WARRANT | ) | |
| | ) | |
| BY THE STATE OF HAWAII | ) | |

THE STATE OF HAWAII

TO THE CHIEF OF POLICE OF THE COUNTY OF MAUI, OR HIS DEPUTY,

OR ANY POLICE OFFICER OF THE COUNTY OF MAUI:

Proof by Affidavit having been made before me this 6th day

of October, 2017, by OFFICER Miroslav BASHEV, of the Maui County

Police Department, that he has reason to believe that there is

sufficient probable cause for me to direct that a search be made

within the below described **vehicle**:

**A 2003 Toyota Sequoia multipurpose vehicle, white in color
with Hawaii license plate MKS471, with a VIN:
5TDZT34A33S165397, registered to Oscar GONZALES of 3500**

S-1

I hereby certify that this is a full, true and
correct copy of the original.

Clerk, Second Judicial Circuit

**Lower Honoapiilani Highway #15B, Lahaina, Maui, Hawaii 96761, impounded under MPD Report #17-042005.**

That Affiant has reason to believe that within the above-described **vehicle** there is presently located the following items:

1. Two (2) Apple laptop computers

2. Two (2) Apple I-TV

3. An Apple Time Capsule (hard drive)

4. Jeep car keys

5. JVC headphones

6. Apple ear bud headphones

7. Three (3) pairs of Maui Jim sunglasses

8. Twelve (12) to fifteen (15) United States treasury savings bonds (unknown exact denominations);

9. The Big Bang Theory DVD set seasons 3 and 4;

10. An unascertainable amount of marijuana, marijuana concentrate, or other controlled substances;

11. An unascertainable amount of United States currency evidencing narcotic sales;

12. Articles of identification or items  containing the name(s), photographic impressions, latent fingerprints or palm prints, handwriting or printing of **Michael AGUILAR and/or James SHAMBLIN,** and other such articles or items which would serve as evidence of occupancy, ownership or control of the above-described **vehicle,** including but not limited to paycheck receipts, identification cards, photographs, utility bills, statements prepared by financial institutions, any object containing handwriting or printing samples, credit cards, credit card statements, checkbooks,

S-2

checks, checking account registers, membership cards, keys, clothing and personal correspondence of **Michael AGUILAR and/or James SHAMBLIN;**

13. Paraphernalia associated with the use and distribution of methamphetamine, cocaine, marijuana, hashish, heroin or other controlled substances to include but not limited to electronic digital gram scales, mechanical scales, plastic bags, plastic ziploc-style packets, heat sealed bags, torch and butane lighters, glass pipes, cut straws, and bags, pouches, canisters and other containers used to store or conceal narcotics;

14. Records relating to the distribution of methamphetamine, cocaine, marijuana, hashish, heroin, or other controlled substances; including but not limited to, list of customers, dates of sales and purchases, telephone numbers and addresses, lists of distributors from whom marijuana, hashish, or other controlled substances can be obtained, records of contacts, conversations, communications, agreements or transactions of **Michael AGUILAR and/or James SHAMBLIN** and/or other parties;

That possession of the above items is in violation of Chapter 708, Chapter 712 and Chapter 329 of the Hawaii Revised Statutes and the above-described items constitute evidence of the offenses of Burglary in the First Degree in violation of Chapter 708 on the Hawaii Revised Statutes and Promoting a Harmful Drug, and Detrimental Drug in violation of Chapter 712 of the Hawaii Revised Statutes and Prohibited Acts Related to Drug Paraphernalia in Violation of Chapter 329 of the Hawaii Revised Statutes, and that such items are subject to seizure under Rule 41 (b) of the Hawaii Rules of Penal Procedure; and as I am satisfied that there is probable cause to believe that the items so described will be present within the above-described **vehicle**

S-3

and that there are grounds for the issuance of a Search Warrant;

YOU ARE HEREBY COMMANDED to make a search of the above-described **vehicle** for the items so described, serving this Search Warrant and making the search within TEN (10) DAYS from the date hereof, but not between the hours of 10:00 o'clock P.M. and 6:00 o'clock A.M., and if such items be found there to seize them leaving a copy of this Search Warrant and a receipt for the items seized and return the Search Warrant and bring the inventory for the items seized before the Judge of the above-entitled Court promptly, as required by law.

DATED:   Wailuku, Hawaii, <u>October 6, 2017</u>

/s/Michelle L. Drewyer(seal)
District Judge of the Above-entitled Court

S-4

FILED

2017 OCT -6  PM 4: 18

N. MARTINS, CLERK
SECOND CIRCUIT COURT
STATE OF HAWAII

IN THE DISTRICT COURT OF THE SECOND CIRCUIT
WAILUKU DIVISION
STATE OF HAWAII

IN RE APPLICATION FOR          )   SEARCH WARRANT NO. 2017-0374
                               )
A SEARCH WARRANT               )
                               )
AFFIDAVIT IN SUPPORT OF        )
                               )
BY THE STATE OF HAWAII         )   AFFIDAVIT IN SUPPORT
_____)   OF SEARCH WARRANTS

<u>AFFIDAVIT IN SUPPORT OF SEARCH WARRANTS</u>

STATE OF HAWAII      )
                     )   ss.
COUNTY OF MAUI       )

    Miroslav BASHEV, first being duly sworn, on oath
deposes and says:

    That he is and has been a member of the Maui County
Police Department since January 25th, 2010 and is presently
assigned to the Kihei Patrol Division;

    That Affiant has been assigned and is investigating the
alleged offenses of Burglary in the First Degree and Theft in
violation of Chapter 708 of he Hawaii Revised Statutes, as well

A-1

I hereby certify that this is a full, true and
correct copy of the original.

_____
Clerk, Second Judicial Circuit

as Promoting Harmful Drugs, and Promoting Detrimental Drugs,
which are possessed or controlled in violation of Chapter 712 of
the Hawaii Revised Statutes, within the below described **vehicle:**

> **A 2003 Toyota Sequoia multipurpose vehicle, white in color
> with Hawaii license plate MKS471, with a VIN:
> 5TDZT34A33S165397, registered to Oscar GONZALES of 3500
> Lower Honoapiilani Highway #15B, Lahaina, Maui, Hawaii
> 96761, impounded under MPD Report #17-042005.**

That Affiant has reason to believe that within the
above-described **vehicle** there is presently located the following
items:

1. Two (2) Apple laptop computers

2. Two (2) Apple I-TV

3. An Apple Time Capsule (hard drive)

4. Jeep car keys

5. JVC headphones

6. Apple ear bud headphones

7. Three (3) pairs of Maui Jim sunglasses

8. Twelve (12) to fifteen (15) United States treasury
savings bonds (unknown exact denominations);

9. The Big Bang Theory DVD set seasons 3 and 4;

10. An unascertainable amount of marijuana, marijuana
concentrate, or other controlled substances;

11. An unascertainable amount of United States
currency evidencing narcotic sales;

12. Articles of identification or items  containing
the name(s), photographic impressions, latent fingerprints
or palm prints, handwriting or printing of **Michael AGUILAR
and/or James SHAMBLIN,** and other such articles or items

A-2

which would serve as evidence of occupancy, ownership or control of the above-described **vehicle**, including but not limited to paycheck receipts, identification cards, photographs, utility bills, statements prepared by financial institutions, any object containing handwriting or printing samples, credit cards, credit card statements, checkbooks, checks, checking account registers, membership cards, keys, clothing and personal correspondence of **Michael AGUILAR and/or James SHAMBLIN**;

13.  Paraphernalia associated with the use and distribution of marijuana, marijuana concentrate, or other controlled substances to include but not limited to electronic digital gram scales, mechanical scales, plastic bags, plastic ziploc-style packets, heat sealed bags, torch and butane lighters, glass pipes, cut straws, and bags, pouches, canisters and other containers used to store or conceal narcotics;

14.  Records relating to the distribution of marijuana, marijuana concentrate, or other controlled substances; including but not limited to, list of customers, dates of sales and purchases, telephone numbers and addresses, lists of distributors from whom methamphetamine, cocaine, marijuana, hashish, heroin, or other controlled substances can be obtained, records of contacts, conversations, communications, agreements or transactions of **Michael AGUILAR and/or James SHAMBLIN** and/or other parties;

That the above items constitute evidence of the offenses of Burglary in the First Degree in violation of Chapter 708 of the Hawaii Revised Statutes and Promoting Detrimental Drugs, or Harmful Drugs, in violation of Chapter 712 of the Hawaii Revised Statutes and/or Prohibited Acts Related to Drug Paraphernalia in Violation of Chapter 329 of the Hawaii Revised Statutes, and that such items are subject to seizure under Rule 41 (b) of the Hawaii Rules of Penal Procedure;

And that the grounds for the issuance of search warrant are as follows:

A-3

1.    That Affiant has been a police officer with the Maui Police Department for over seven years and is currently assigned to the Kihei Patrol Division;

2.    That Affiant has received training by Senior Vice Officers in various fields to include:  Schedule Drugs, Pharmaceutical controlled substances, packing doses/weights and measurements, Informant Development, and other various training in the Drug and Narcotics field regarding investigative techniques for different types if illegal narcotics cases and methods of distribution utilized by individuals who traffic illegal narcotics;

3.    That Affiant has also attended a certification course provided by the NIK Public Safety Incorporated regarding drug identification and is certified to test illegal narcotics;

4.    That Affiant has participated in the investigation and execution of multiple search warrants, wherein Crystal Methamphetamine, cocaine, marijuana, and other prescription pills were recovered;

5.    That on September 27, 2017, at about 1324 hours, police responded to a report of a Burglary at 47 Ponana Street in Kihei documented under report number 17-040736;

a.    That the victim Jaime PEREZ, reported that multiple items were stolen from within his residence which consisted of two (2) Apple laptop computers, two (2) Apple I-TV, an Apple Time Capsule (hard drive), Jeep car keys, a JVC headphones, Apple ear bud headphones, three (3) pairs of Maui Jim sunglasses, twelve (12) to fifteen (15) United States treasury savings bonds papers, The Big Bang Theory DVD set seasons 3 and 4;

b.    PEREZ also advised that his red 2005 Ford Mustang two door convertible bearing license plates LBY527 was stolen from within the garage of the residence.

6.    On October 2, 2017, a special assignment was conducted involving plain clothes officers of the Kihei Patrol Division;

a.    That the special assignment was conducted to target a male identified as a James SHAMBLIN who was the primary offender in numerous cases involving Illegal Narcotics, Burglary, Thefts and stolen

A-4

vehicles;

b.   That Officers would conduct checks and at various areas that SHAMBLIN was known to frequent as well as conduct surveillance at SHAMBLIN's known associates residences;

c.   That SHAMBLIN also had a Felony Infomation warrant for his arrest in the amount of $10,000.00 and a traffic warrant for $250.00;

7.   On October 02, 2017, at approximately 1035 hours, officers conducted checks at 13 Namauu Place the residence of a Wendy WIDMAIER who was a known associate of SHAMBLIN;

a.   Officers then observed a male park a red colored Ford Mustang bearing Hawaii license plate LBY-527 across the street from 13 Namauu Place and walk to the residence located at 13 Namauu Place;

b.   Checks made with Dispatch confirmed that the vehicle had been reported stolen as a result of a Burglary (17-040736) in which the keys were removed from the residence and the vehicle LBY-527 was stolen;

c.   Surveillance officer watched the residence until the male exited the premises at 13 Namauu Place and approached the parked vehicle LBY-527;

d.   Surveillance officers then converged on the male once he opened the door to vehicle LBY-527 and sat within the driver seat;

   i.   Surveillance officers confirmed that the male was the same male who was observed parking the vehicle earlier, the male was identified as Michael AGUILAR.

e.   AGUILAR after being read his Constitutional Rights admitted to officers that the vehicle had been given to him by SHAMBLIN;

f.   AGUILAR was placed under arrest for Burglary in the First Degree and Unauthorized Control of a Propelled Motor Vehicle;

8.   That on October 03, 2017, at about 1053 hours, surveillance officers made contact with AGUILAR's girlfriend identified as Rachell ROBERTS;

A-5

a.   ROBERTS advised surveillance officers that SHAMBLIN was currently in possession of AGUILAR's vehicle bearing Hawaii license plates MKS-471 and that SHAMBLIN was refusing to relinquish AGUILAR's vehicle to her until he (SHAMBLIN) was paid back monies that AGUILAR still owed to him;

9.   That on Thursday, October 5, 2017 at about 1712 hours, Affiant was notified by Officer SUGIYAMA that he observed vehicle MKS471 parked in the driveway of the residence located at 108 Eleu Place in Kihei;

10.   That Officer SUGIYAMA contacted the owner/representative of the property at 108 Eleu Place Caroline VILLANUEVA;

a.   That VILLANUEVA advised Officer SUGIYAMA that the vehicle MKS471 was not authorized to be parked on the property, located at 108 Eleu Place in Kihei, but gave police permission to enter the property and visually inspect the vehicle MKS471 from the exterior.

11.   That Affiant while conducting checks of the vehicle MKS471 from the outside observed an unknown weight of green vegetation suspected to be Marijuana in plain view on top of the center console within the vehicle MKS471;

a.   That Affiant could also detect the odor of Marijuana emanating from the cracks of the closed doors to the vehicle;

12.   That based on Affiant's experience and training, the green vegetation and the odor emanating from within the led Affiant to believe that the green vegetation was Marijuana;

13.   That the vehicle MKS471 was then impounded and towed to the Kihei Police Station under Narcotics Investigation MPD Report #17-042005 pending the procurement of a search warrant;

14.   That Affiant conducted a computerized check on the vehicle MKS471 and found that the vehicle was registered to Oscar GONZALES of 3500 Lower Honoapiilani Highway #15B in Lahaina, Maui.

A-6

a.  That Affiant contacted Oscar GONZALES via cellular
    telephone number 808-276-8040;

b.  That GONZALES advised Affiant that he had sold the
    vehicle MKS471 to a male identified as Michael AGUILAR
    aproximately 3-4 weeks ago;

c.  That GONZALES met AGUILAR through church and that
    AGUILAR had furnished GONZALES with $500.00 in cash to
    purchase the vehicle MKS471 and that AGUILAR was
    supposed to pay GONZALES the balance of $4,500.00
    later;

d.  GONSALES advised Affiant that after he was paid the
    final balance then he was supposed to transfer the
    title over to AGUILAR;

15.  That based on the information contained in this
affidavit, Affiant believes that concealed within the above-
described **vehicle MKS471**, and Affiant desires to search
same;

That further Affiant sayeth naught.

Miroslav BASHEV, E-15197
Kihei Patrol Division
Maui County Police Department

Subscribed and sworn to before me
this 6th day of October, 2017

/s/Michelle L. Drewyer(seal)
_____
District Judge of the Above-Entitled Court

A-7

SW 2017-0374

## IN THE DISTRICT COURT OF THE SECOND CIRCUIT
### WAILUKU DIVISION
### STATE OF HAWAII

IN RE THE APPLICATION OF          )
                                  )
A SEARCH WARRANT                  )
                                  )
BY THE STATE OF HAWAII            )
_____ )

### RETURN AND AFFIDAVIT

STATE OF HAWAII          )
                         )   SS.
COUNTY OF MAUI           )

The undersigned, having received the foregoing Search Warrant dated the 6th

day of October, 2017 executed it as follows:

On the 6th day of October, 2017 at 5:22 o'clock p.m., I served a copy of the

Search Warrant upon_____n/a_____

_____

to search the vehicle _____Described as a white 2003 Toyota Sequoia MPVH bearing__

Hawaii license plated MKS471 and registered to Oscar GONZALES._____

described in said Search Warrant; and seized the properties shown in the inventory

attached hereto and marked EXHIBIT "A".

I left a receipt for the properties shown in said inventory within__the vehicle__

bearing Hawaii license plate MKS471.__

I hereby certify that this is a full, true and
correct copy of the Original.

_____
Clerk, Second Circuit Court

This inventory was made in the presence of _____

Lieutenant Randy Esperanza. _____

I swear that the inventory attached hereto is a true and detailed account of

all the properties taken by me on the Search Warrant.

Officer Miroslav BASHEV
Kihei Patrol Division

Maui Police Department

Subscribed and sworn to and returned

before me this ___11___ day of

_October_ , 2017

/s/Michelle L. Drewyer(seal)
_____
District Judge of the above-entitled court

EXHIBIT "A"

SW 2017-0374

Pg 1 of 5

The items listed below were recovered as evidence following the execution of a search warrant at

Lahai Police Station Impound Lot or Veh with Plates MKS 471, County of Maui, on

October 6th, 2017 at 1722 hours.

1. One plastic zip-loc packet containing suspected crystal meth

2. Two empty plastic zip-loc packets
   - Items number 1 and 2 recovered from front pocket of grey camo Maui built back pack

3. Two plastic zip-loc bags containing green leafy vegetation suspected of being marijuana

4. One plastic zip-loc packet containing two brown pills and brown powdery substance.

5. One plastic zip-loc packet containing a marijuana cigarette

6. One rubber "No Goo" container, containing brown tarry substance.

7. One black metal "Sharp Stone" grinder - empty

8. One blue and green zippered pouch
   Note: items number 3 to 7 recovered within item #8

9. One grey Maui built camo back pack
   Note: items 1 through 8 were recovered in item #9

Recipient: _____N/A_____   Witnessed by: ____ 10797

Date: _____ Time: _____   Date: 10/06/2017  Time: 1955hrs

Witnessed by: _____

SW 2017-0374
Pg 2 of 5

EXHIBIT "A"

The items listed below were recovered as evidence following the execution of a search warrant at

Kihei Police Station Impound Lot or veh with plates MKS 471, County of Maui, on

October 6th, 2017 at 1722 hours.

10. Green leafy vegetation suspected of being Marijuana found within center console.

11. One broken clear glass pipe and one black zippered "Olivia and Joy" wallet, and one black Hanes low cut sock - recovered in glove box.

12. One silver color torch lighter recovered from the front passenger seat.

13. Medical documents (3 papers) belonging to Michael Aguilar, - recovered from within center console storage compartment.

14. Green leafy vegetation suspected of being Marijuana, recovered from the rear passenger seat.

15. $180 in US currency. (7 x $20, 1 x $10)

16. One Mastercard for James Shaybun card # 5273 6810 9152 7482 debit "Walmart money card".

17. One black/white Nike shoe, size 6.5 US left side, recovered near driver side floor board. NOTE: Items 15 and 16 were located within item 17.

Recipient: _____N/A_____     Witnessed by: _____ 10797

Date: _____ Time: _____     Date: 10/06/2017 Time: 1955 hrs

Witnessed by: _____

EXHIBIT "A"

SW 2017- 0374
Pg 3 of 5

The items listed below were recovered as evidence following the execution of a search warrant at

14Mei Police Station Impound lot or vehicle with plates MLS 471, County of Maui, on

October 6th, 2017 at 1722 hours.

18. Green Leafy Vegetation suspected to be Marijuana found in the 3rd row driver's side seat.

19. One Black "Leitz" Wetzlar Binoculars and case, found in glovebox

20. One Black Fuel Motorcycle Helmet - front passenger floorboard

21. One Handicap Placard - State of California #727875 D - hanging from rear view mirror

22. One Black LG, Verizon Cellular Telephone and charger, recovered from center console - lighter - charger

23. One Black and Silver Motorcycle cover - recovered from rear driver's side floorboard.

24. Kawasaki Ninja Motorcycle parts (red/blue) recovered from rear driver's side 3rd row seat.

25. One Black "Rosso Bianco" Single strap black back pack containing an assortment of room and vehicle keys, and two garage openers

Recipient: _____N/A_____          Witnessed by: _____ 10797

Date: _____ Time: _____     Date: 10/06/2017 Time: 1955 hrs

                                 Witnessed by: ~~~~~~~~~~

EXHIBIT "A"

SW 2017-0374
Pg 4 of 5

The items listed below were recovered as evidence following the execution of a search warrant at

Kihei Police Station Impound Lot of Vehicle with Plate MKS471, County of Maui, on

October 6th, 2017 at 1722 hours.

26. One An Assortment of Silverware

27. Two Propane Pouches

28. One Pair of Black Quicksilver Men's Slippers size 12/13

29. One Black Men's Dickies Pants, size 40/32

30. One Black Foster Grant Plastic Sunglasses

31. One Two Verizon Samsung Cell Phones, one is missing battery

32. One Black Amazon Tablet with grey/orange cover

33. One Blue Canvas Kletin Backpack found in rear trunk area

Note: Items 26-32 found within Item # 33

34. One Winchester Sawed off Model 37 steel bilt 410 shotgun and one Remington Peters 410 shotgun shell.
Note: Gun was loaded

34. A. Black Bag " Quickpod by Digipower" Gun was in.

Recipient: _____ N/A _____      Witnessed by: _____ 1379

Date: _____ Time: _____      Date: 10/06/2017  Time: 1955 #1

Witnessed by: _____

EXHIBIT "A"

SW 2017-0374
Pg 5 of 5

The items listed below were recovered as evidence following the execution of a search warrant at

KIHEI POLICE STATION IMPOUND LOT OF VEH. WITH PLATE MKS471, County of Maui, on

October 6th, 2017 at 1722 hours.

35. ASSORTMENT OF WOMEN'S CLOTHING AND
    ONE MEN'S SHORTS (SURF SHORT QUICKSILVER).

36. ONE VICTORIA SECRET MAKE UP BAG, CONTAINING,
    AN ASSORTMENT OF WOMENS MAKE UP.

37. ONE GREY "PLATINA BOTIQUE" BAG, WHICH WAS
    RECOVERED FROM THE REAR TRUNK OF VEHICLE.
    NOTE! ITEM NUMBERS 34-36 FOUND WITHIN
    ITEM NUMBER 37.

38. ONE VEHICLE LICENCE PLATE RNG 064, STATE
    OF HAWAII, FOUND IN DOOR OF DRIVER'S SEAT.

39. ASSORTMENTS OF KAWASAKI NINJA MOTORCYCLE
    PARTS

40. ONE SUSPECTED METAL LOCK PUNCH - REAR TRUNK.

41. HONOLULU COOKIE BAG
    NOTE: ITEMS 39-40 WERE FOUND WITHIN
    ITEM # 41.

Recipient: _____ N/A _____    Witnessed by: _____ 15797 _____

Date: _____ Time: _____    Date: 10/06/2017  Time: 1955 hrs

Witnessed by: _____ 0379

## ATTACHMENT D

Two photos of the Ziploc type packet with blue devil logos recovered from the front pocket of the grey Maui Built camouflage backpack in the Toyota Sequoia on October 6, 2017



Three photos of the Ziploc type packets (three of the eight packets with blue devil logos) that contained methamphetamine recovered from SHAMBLIN's backpack on October 26, 2017







2

Two photos of the smaller baggies/packets (numerous Ziploc type packets with blue devil logos) contained in the larger plastic Ziploc type baggie recovered from SHAMBLIN's backpack on October 26, 2017





## ATTACHMENT E

SHAMBLIN's MasterCard debit card recovered from the Toyota Sequoia on October 6, 2017



## <u>ATTACHMENT F</u>

Four photos of the green Sterilite brand plastic container recovered from O.G. and J.G. on October 7, 2017 from the Toyota Sequoia

 

 

Four photos of the blue Sterilite brand plastic container recovered from the KBH room 329 safe on October 26, 2017







## ATTACHMENT G

KENJI M. PRICE #10523
United States Attorney
District of Hawaii

KENNETH M. SORENSON
Chief, Criminal Division

MARSHALL H. SILVERBERG #5111
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone:   (808) 541-2850
Facsimile:   (808) 541-2958
Email:   Marshall.Silverberg@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAR 15 2018

at ____ o'clock and ___ min ___ M.
SUE BEITIA, CLERK

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR. NO. CR 18 - 00039 LEK |
| | ) |
| Plaintiff, | ) INDICTMENT |
| | ) |
| vs. | ) COUNTS 1 & 3: 21 U.S.C. §§ 841(a)(1) |
| | )   and 841(b)(1)(B)(viii) |
| JAMES WAYNE SHAMBLIN, | ) COUNTS 2 & 4: 18 U.S.C. § |
| | )   924(c)(1)(A)(i) |
| Defendant. | ) COUNTS 5 & 6: 18 U.S.C. § 922(g)(1) |
| | ) |
| | ) Forfeiture Allegations |

## INDICTMENT

## COUNT 1
(21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii))
(possession with intent to distribute methamphetamine)
(backpack methamphetamine)

The Grand Jury charges that:

On or about October 26, 2017, in the District of Hawaii, the defendant,

JAMES WAYNE SHAMBLIN, did knowingly and intentionally possess with

intent to distribute five grams or more of methamphetamine, its salts, isomers, and

salts of its isomers, a Schedule II controlled substance, to wit, approximately 16.97

grams of methamphetamine contained within a backpack in the defendant's

possession.

All in violation of Title 21, United States Code, Sections 841(a)(1) and

(b)(1)(B)(viii).

## COUNT 2
(18 U.S.C. § 924(c)(1)(A)(i))
(possession of firearms in furtherance of a drug trafficking crime)
(backpack firearm)

The Grand Jury further charges that:

On or about October 26, 2017, in the District of Hawaii, the

defendant, JAMES WAYNE SHAMBLIN, did knowingly possess a firearm, to

wit, one .45 ACP caliber pistol, comprised of an A.R. Sales Co. model 1911 frame,

2

bearing serial number LH 1478, and a Colt Government Model slide, contained

within a backpack in the defendant's possession, in furtherance of the drug

trafficking offense charged in Count 1 of this Indictment.

All in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

## COUNT 3
(21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii))
(possession with intent to distribute methamphetamine)
(hotel room safe)

The Grand Jury charges that:

On or about October 26, 2017, in the District of Hawaii, the defendant,

JAMES WAYNE SHAMBLIN, did knowingly and intentionally possess with

intent to distribute five grams or more of methamphetamine, its salts, isomers, and

salts of its isomers, a Schedule II controlled substance, to wit approximately 31.2

grams of methamphetamine located within a hotel room safe in a room registered

to the defendant and where he had been residing.

All in violation of Title 21, United States Code, Sections 841(a)(1) and

(b)(1)(B)(viii).

3

## COUNT 4
(18 U.S.C. § 924(c)(1)(A)(i))
(possession of firearms in furtherance of a drug trafficking crime)
(hotel room safe)

The Grand Jury further charges that:

On or about October 26, 2017, in the District of Hawaii, the

defendant, JAMES WAYNE SHAMBLIN, did knowingly possess a firearm, to

wit, one Hi-Point Firearms, model CF380, .380 ACP caliber pistol, bearing serial

number P816559, located within a hotel room safe in a room registered to the

defendant and where he had been residing, in furtherance of the drug trafficking

offense charged in Count 3 of this Indictment.

All in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

## COUNT 5
(18 U.S.C. § 922(g)(1))
(being a felon in possession of a firearm and ammunition)

The Grand Jury further charges that:

On or about October 26, 2017, in the District of Hawaii, the

defendant, JAMES WAYNE SHAMBLIN, having been convicted of a crime

punishable by imprisonment for a term exceeding one year, did knowingly possess

in and affecting interstate commerce a firearm and ammunition, to wit, one .45

ACP caliber pistol, comprised of an A.R. Sales Co. model 1911 frame, bearing

4

serial number LH 1478, and a Colt Government Model slide, and loaded with six rounds of ammunition.

All in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).

### COUNT 6
(18 U.S.C. § 922(g)(1))
(being a felon in possession of a firearm and ammunition)

The Grand Jury further charges that:

On or about October 26, 2017, in the District of Hawaii, the defendant, JAMES WAYNE SHAMBLIN, having been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess in and affecting interstate commerce a firearm and ammunition, to wit, one Hi-Point Firearms, model CF380, .380 ACP caliber pistol, bearing serial number P816559 and loaded with seven rounds of ammunition.

All in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).

\     \

\     \

\     \

5

## FIRST FORFEITURE ALLEGATION

1.      The allegations contained in Counts 1 and 3 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of noticing forfeitures pursuant to Title 21, United States Code, Section 853.

2.      The United Sates hereby gives notice to the defendant that, upon conviction of the offense charge in Count 1 of this Indictment, the government will seek forfeiture, in accordance with Title 21, United States Code, Section 853(a), of any and all property constituting, or derived from, any proceeds, obtained, directly or indirectly, as the result of the violation of Title 21, United States Code, Section 846, alleged in this Indictment, and any and all property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, the violation of Title 21, United States Code, Section 846, alleged in this Indictment, including but not limited to $4,385.00 in United States currency seized from a backpack in the defendant's possession on October 26, 2017.

## SECOND FORFEITURE ALLEGATION

1.      The allegations contained in Counts 2, 4, 5, and 6 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of noticing forfeitures pursuant to Title 18, United States Code, Section 924(d)(1), and Title 28, United States Code, Section 2461(c).

2.     The United States hereby gives notice to the defendant that, upon

conviction of the offenses charged in Counts 2, 4, 5, and 6 of this Indictment, the

government will seek forfeiture, in accordance with Title 18, United States Code

924(d)(1), and Title 28, United States Code, Section 2461(c), of any firearm or

ammunition involved in or used in the offenses, including but not limited to one

.45 ACP caliber pistol, comprised of an A.R. Sales Co. model 1911 frame, bearing

serial number LH 1478, and a Colt Government Model slide, and loaded with six

rounds of ammunition, and one Hi-Point Firearms, model CF380, .380 ACP caliber

pistol, bearing serial number P816559 and loaded with seven rounds of

ammunition.

DATED:   March 15, 2018, at Honolulu, Hawaii.

A TRUE BILL

/s/ Foreperson
FOREPERSON, GRAND JURY

KENJI M. PRICE
United States Attorney
District of Hawaii

KENNETH M. SORENSON
Chief, Criminal Division

MARSHALL H. SILVERBERG
Assistant U.S. Attorney

7

United States v. James Wayne Shamblin
Cr. No.
"Indictment"